PUGH v. SCHINDLER.

1. EJECTMENT—BOUNDARIES—ISSUES.

In ejectment, involving the true boundary line between plaintiff's and defendant's lands, situated, respectively, to the south and north of the east and west quarter line of the section, both parcels being bounded on the west by the north and south quarter line, the question as to the exact location of the latter line was immaterial.

2. SAME—INSTRUCTIONS—BURDEN OF PROOF.

A statement by the court in such action, that "it will not do to permit boundaries to be disturbed and moved upon a survey made from an assumed starting point, *without some proof* of its being a true line, located and fixed by the government survey," was not misleading, where the court had already charged that plaintiff's claim could only be established by a preponderance of the evidence.

3. SAME—OLD FENCES.

A request to charge that a crooked fence of long standing, dividing the respective parcels, was better evidence of the boundary line between them than a recent survey, was properly refused, especially where there were traditions and alleged agreements on the assumption that it was not the boundary line, and where, moreover, counsel themselves stated that there never was a government line run, but that the practice was only to fix and establish quarter posts on the outside and at the center of sections.

4. SAME—APPEAL—OBJECTIONS NOT RAISED BELOW.

An objection of a variance between the declaration and the verdict in ejectment in the description of the premises will not be considered on appeal, where not raised in the lower court or supported by an assignment of error.

Error to Kent; Perkins, J. Submitted January 16, 1903. (Docket No. 56.) Decided May 29, 1903.

Ejectment by John A. Pugh against Charles Schindler and others. From a judgment for plaintiff, defendants bring error. Affirmed.

*Rodgers & Rodgers,* for appellants.

*Ward & Brown,* for appellee.

HOOKER, C. J. This is an action of ejectment. The parties own adjacent lands; the plaintiff having the original title to a parcel of 15 acres in the northwest corner of the southeast quarter of the section, while the defendants have the original title to the northeast quarter of the same section. The dispute arises over the location of the east and west quarter line, which separates the parcels, and the north and south quarter line, which marks the western limit of the disputed parcel. Only a few rods of land are involved. A fence has separated these tracts for many years. The plaintiff claims that this fence is not upon the true line, and that it was built and has been maintained upon an agreement that it might not be accurate, and that it should be subject to change when a proper survey should establish the true line. Plaintiff claims that such a survey has now been made, and that it marks the northern and western boundaries of the disputed strip, while the old fence marks its southern limits. The defendants claim (1) that the alleged survey is not correct, and does not show where the true line is; (2) that the fence is on the true line; (3) that, irrespective of the question of the location of the true line, the occupancy was never upon the understanding alleged by the plaintiff, but has been adverse. The plaintiff recovered a judgment, and the defendants have appealed.

It is manifest that the jury must have found that the survey shown by the plaintiff was correct, and established

the true quarter lines. A number of questions relate to this subject. The real controversy between these parties is whether the defendants' fence is too far south. The jury found that it was, and there was testimony from which it might be found. We think the court did not err in submitting the question to the jury.

The description in the declaration is, "A strip of land, about thirty-one feet in width north and south, and twenty rods in length east and west, in the northwest corner of the southeast quarter of the section." The defendants now contend that there is a question concerning the eastern and western boundaries in the case, growing out of an alleged uncertainty as to the north and south quarter line. There was testimony regarding two stakes on the north side of the section, about six feet apart. This would make a variation of about three feet at the center of the section. The description in the declaration is perfect, and extends to the center of the section ( *i. e.*, to the north and south quarter line, wherever it is ), and we understand that the west line of each party's property has that line for a boundary, wherever it is. If it is farther west than defendants claim their land to extend, we do not see that the defendants are losers. The verdict described the land substantially as it was described in the declaration, though more definitely. It is manifest that if the defendants surrender the strip of land upon the north side of plaintiff's land, which is the real matter in controversy, there will be no confusion. They will not be expected to give up land to the west of the west line of their property, nor east of the east line of plaintiff's inclosure; and we think the controversy over the north and south quarter line of no importance. It is a technical question, without substance, especially in view of the fourteenth request, and the offer of counsel, made at circuit and renewed here, to waive the three-foot strip off from the west end of the lot. This disposes of the alleged errors in relation to testimony and requests involving the north and south quarter line.

The court is said to have erred in stating that "it will not do to permit boundaries to be disturbed and moved upon a survey made from an assumed starting point, without some proof, as I have said, of its being a true line, located and fixed by the government survey." It is contended that he should have said "established by a preponderance of the evidence." As he had already instructed the jury that the plaintiff's claim could only be established by a preponderance of the evidence, we think that they were not misled.

Counsel ask us to reverse the judgment because the court erred in instructing the jury that the defendants claimed that "the fence, as now standing upon the premises, is located upon a line which would be indicated by the government survey dividing these parties' lands; in other words, that the true line is where this fence now stands." They say:

"This was a clear mistake. We never claimed that our fence was on the true line as located by the government survey, and in fact were very strenuous throughout the entire trial in claiming that no one at this late day knows or has any way of finding out where the government surveyor located that line, and consequently that our fence is the best evidence of where the line is."

The latter quotation falls little short of claiming the old fence to be upon the true line, and, if it is not sufficient, the judge was authorized to understand such claim to be made from defendants' fifth request, upon a refusal to give which error is assigned. It is enough to say of this that there was some evidence that it was not upon the true line, and it was not for the judge to say, impliedly or otherwise, that there was not. Again, the contention that the judge should have practically decided the case, by saying that this crooked fence was better evidence of the line in its entirety and at all points than a survey made lately, was properly refused. There was not only a deviation from the direct, that is inconsistent with the theory of a correct line, but there were traditions and alleged agree-

ments upon the assumption that it was not. Moreover, counsel themselves state that there never was a government line run, and that the practice was only to fix and establish quarter posts on the outside and at the center of sections. If this is true, the essential thing was to establish the quarter posts; and there would be no presumption that the fence, as a whole, was upon a true line, if it was a crooked fence. The crooked line might become the established line by adverse possession, but it could never be the original or true government line, because none was actually run, and theoretically the true line would be straight. This might not be true of lines actually run by government surveyors.

It is said that the court erred in saying that it was claimed that the fences east and west started at quarter posts when built. It is said there was no testimony tending to show where the west fence started from. The charge does not state what the testimony was in that regard, and the whole question was left to the jury upon such evidence as there was as to where the quarter posts were. There was no error in this, or in stating the claim of the plaintiff.

The point is made that the judgment is erroneous because the description varies from the declaration. The verdict is as follows:

"Commencing at the center of the section 32, running east 307.3, thence south 28 feet, then west 307.3, then north 33 feet to the place of beginning."

The declaration describes the land as a strip about 31 feet wide, so that there is a variance of a wedge-shaped piece, 2 feet wide on the west end, and extending east to a point less than half-way to the east end of plaintiff's tract. We have frequently held that the verdict must follow the declaration as to description, or that, at least, the declaration must cover and include the land recovered. Had this been brought to the attention of the trial court, he would doubtless have permitted an amendment, which would

have been within his authority. No question was raised by defendants, that we discover, until the case reached this court, and we find no assignment of error that raises the question.

We think there is no occasion to discuss other assignments of error.

The judgment is affirmed.

The other Justices concurred.